373-08/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRANS POWER CO. LTD.,

              **08 CV 5381 (LAP)**

     Plaintiff,

 -against-

J&F LIMITED,

     Defendant.
------------------------------------------------------------x


## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF VACATURE OR REDUCTION
## <u>OF MARITIME ATTACHMENT</u>


              Freehill Hogan & Mahar, LLP
              Attorneys for Defendant
              J&F Limited
              80 Pine Street
              New York, NY 10005
              (212) 425-1900
              (212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/310977.1

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted along with the accompanying Cheung Declaration and Kahn Affirmation in support of Defendant J&F Limited ("J&F")'s motion to vacate or reduce the attachment obtained by Plaintiff Trans Power Co. Ltd. ("Trans Power"). For the reasons set forth below, the attachment should be found to be obtained in bad faith and should be vacated, awarding J&F its fees and disbursements expended in this action.

## BACKGROUND FACTS

For the complete background to this matter, the Court is respectfully referred to the accompanying Cheung Declaration. The salient background facts, however, are repeated in short as follows.

In or about February 2006, J&F chartered its vessel the M/V VANGUARD to plaintiff Trans Power. Trans Power in turn sub-chartered the vessel to non-party SK Shipping, who in turn sub-sub-chartered the vessel to non-party Essar Shipping for a voyage from Mina Saqr, U.A.E. to Hazira, India. While the vessel was discharging at Hazira on behalf of Essar, the M/V VANGUARD was damaged in a collision with the M/V ABG PIONEER, a barge also employed by Essar.

J&F made due demand of Trans Power to pay for the damage to the M/V VANGUARD in the amount of $151,871.49 and to pay outstanding charter hire and related charges of $79,704.14. Trans Power refused to pay these amounts but agreed to provide J&F with security in the amount of $250,000, which includes both the collision damages claimed and the outstanding hired claimed plus a small additional amount to partly cover awardable interest, costs and fees. This amount was paid into J&F's Hong

Kong attorneys' escrow account and is currently being held in escrow pending resolution of the dispute between the parties. Cheung Declaration ¶3-6.

Trans Power advised J&F's Hong Kong counsel that the escrow funds were actually posted by non-party SK Shipping but should be deemed as the remittance of the escrow amount by Trans Power. A dispute now exists between SK Shipping and Trans Power concerning *inter alia* this remittance. The SK Shipping – Trans Power dispute does not involve J&F. J&F is informed, though, that SK Shipping has sought some $600,000 in security from Trans Power. Cheung Declaration ¶7.

Trans Power's Verified Complaint alleges that it overpaid hire in the amount of $251,033.10 and that it has "duly demanded" this amount returned to it by J&F. No part of this allegation – which is the sole basis for a claim by Trans Power against J&F – is true, however: (1) Trans Power has underpaid hire by approximately $80,000; (2) Trans Power has never made any demand to J&F for the return of any overpaid hire; (3) Trans Power, even in the ongoing arbitration between Trans Power and J&F, has never set forth any basis for reimbursement of overpaid hire; and (4) Trans Power never overpaid any monies to J&F at all – the subject $250,000 was instead paid into an escrow account, which serves as full security for the amount on deposit in the escrow as security to both Trans Power and J&F. Cheung Declaration ¶8-9.

Trans Power commenced the instant action, seeking security pursuant to Rule B from J&F in bad faith – Trans Power had no claim of "overpaid hire" to advance against J&F. Trans Power is and was fully secured by the escrow account and an arbitration is ongoing between the parties concerning the main dispute between the parties (Trans Power's failure to pay charter hire in full and failure to pay for damages stemming from

the collision). Accordingly, Trans Power's entire action before this Court is frivolous and the attachment should be vacated.

## ARGUMENT

### Point I

### THE PLAINTIFF HAS THE BURDEN TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED

It is well established that at a Rule E(4)(f) hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. The Rule provides in pertinent part as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall be required to show why the arrest or attachment should not be vacated*....

Rule E(4)(f) (emphasis supplied). *See also* Aqua Stoli Shipping Ltd. v. Gardner Smith Pty . Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Salazar v. The ATLANTIC SUN, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegación, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001). The standard generally is that "the plaintiff must demonstrate that 'reasonable ground' exist for the attachment." Wajilam Exports (Singapore) Ptd. Ltd. v. ATL Shipping Ltd., 2006 U.S. Dist. LEXIS 77033, *7-8 (S.D.N.Y. Oct. 23, 2006).

### Point II

### VACATURE IS APPROPRIATE WHEN THE PLAINTIFF IS ALREADY FULLY SECURED

Recently, the Second Circuit enumerated certain specific circumstances in which an attachment must be vacated by a district court even if the technical requirements of a

Rule B attachment have been satisfied. Aqua Stoli, 460 F.3d at 445. The Aqua Stoli Court unambiguously stated that:

> we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) ***the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.***

Id. (emphasis supplied).

In this case, Plaintiff Trans Power already has full security for the one and only claim it has pled here – overpaid hire. That claim is fully secured by the $250,000 sitting in the escrow account of James Ho & Co., Hong Kong. Trans Power is well aware that these funds serve to fully secure any claim it may have of overpaid hire, because it is Trans Power itself which agreed to place the funds in escrow and directed the funds transfer to this account.

There can be no doubt that funds in an escrow account secure both parties to the escrow: this is the very definition of an escrow. An escrow account is one held for "the depositor [by] an escrow agent which is returnable to depositor or paid to [a] third person on the fulfillment of [the] escrow condition". If Trans Power succeeds in its arbitration with J&F, the $250,000 will be returned to it by James Ho & Co. as a condition of the escrow agreement. Cheung Declaration ¶9(c). Accordingly, Trans Power is fully secured.

Trans Power, through the instant action, is seeking to secure its own security and such action amounts to harassment, plain and simple. There is no justifiable reason why Trans Power should want or need security since it is already fully secured by way of the

Hong Kong escrow. As pronounced by the Second Circuit in Aqua Stoli, the attachment should be summarily vacated on the basis that the Plaintiff is already fully secured. Aqua Stoli, 460 F.3d at 445; *see also* Dolco Investments, Ltd., Cypr[us] v. Moonriver Development, Ltd., Gml, Ltd., 486 F.Supp.2d 261, 268 (S.D.N.Y. 2007), *citing* Aqua Stoli and Allied Mar., Inc. v. Rice Corp., 2004 U.S. Dist. LEXIS 20353, *9 (S.D.N.Y. Oct. 12, 2004). It does not matter that the security obtained is in another jurisdiction or obtained through a foreign proceeding. *See, e.g.,* The Rice Co. v. Express Sea Transport Corp., 2007 U.S. Dist. LEXIS 84300 (S.D.N.Y. Nov. 15, 2007) and World Reach Shipping Ltd. v. Industrial Carriers Inc., 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. Nov. 9, 2006).

### Point III

### THE ATTACHMENT IS FRIVOLOUS AND WRONGFUL AND THE COURT SHOULD AWARD J&F REASONABLE ATTORNEYS FEES

It is well-settled that a Rule B attachment serves two purposes: to obtain jurisdiction over the defendant and to secure a potential judgment in the plaintiff's favor. Winter Storm v. TPI, 310 F.3d 263, 268 (2d Cir. 2002). Here, Trans Power's sole stated purpose was to obtain security (there was no need for Trans Power to use the remedy to obtain jurisdiction over J&F since the parties are already actively arbitrating their dispute). In a case where Trans Power already had full security, yet sought to essentially double that security without any legal foundation, the attachment should be found to be brought purely for tactical reasons and without other basis and therefore frivolous and wrongful. *See* Folkstone Maritime, Ltd. v. CSX Corp., 1988 U.S. Dist. LEXIS 10606

(N.D.IL. Sept. 22, 1988). Trans Power's action before this Court was without foundation and smacks of abuse and harassment.

J&F submits that in such circumstances, an award of fees and costs would be an appropriate remedy. J&F recognizes that the standards against which wrongful attachments should be measured are high. In such a case, a plaintiff will be liable for wrongful attachment only upon a showing of bad faith, malice, or gross negligence. *See* Schoenbaum, Admiralty and Maritime Law, vol. 2 at 500, *citing inter alia* Central Oil Co. v. M/V LAMMA-FOREST, 821 F.2d 48 (1st Cir. 1987). Here, J&F submits that this standard has been met, because Trans Power clearly knows that it has not overpaid hire in the amount of $250,000 and that it is fully secured for any claim it may have against J&F by way of the escrow account in Hong Kong.

There are three possibilities, any of which warrant imposition of attorneys' fees for wrongful attachment. Trans Power either deliberately failed to alert the Court to the fact that it already had security in the form of the escrow account, which constitutes bad faith, or it neglected to consider the fact that it already had full security before pursuing J&F for the same security it already had, which constitutes gross negligence. If Trans Power brought this attachment action to obtain an improper strategic advantage over J&F, the same constitutes malice. In any of these three situations, imposition of attorneys fees and the costs of this action would be justified.

## CONCLUSION

For all the foregoing reasons, the attachment should be vacated or reduced, with a finding that the attachment was wrongful and brought in bad faith, awarding J&F its reasonable attorneys fees in bringing this application.

Dated: New York, New York
      August 20, 2008

                                      Respectfully submitted,
                                      FREEHILL HOGAN & MAHAR, LLP
                                      Attorneys for Defendant
                                      J&F Limited

                            By: _____
                                      Michael E. Unger (MU 0045)
                                      Lawrence J. Kahn (LK 5215)
                                      80 Pine Street
                                      New York, NY  10005
                                      (212) 425-1900
                                      (212) 425-1901 fax