BLANK ROME, LLP
Attorneys for Plaintiff
TRANS POWER CO. LTD.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY  10174-0208
(212) 885-5000
jgreenbaum@blankrome.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRANS POWER CO. LTD.,

        Plaintiff,

-against-

J & F LIMITED,

        Defendant.

08 Civ. 5381(LAP)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION
TO VACATE PROCESS OF MARITIME ATTACHMENT AND
GARNISHMENT AND RELEASE RESTRAINED FUNDS**

This memorandum and the accompanying Declaration of Jack A. Greenbaum, Esq. are submitted on Plaintiff's behalf in opposition to an application by Defendant to vacate the Process of Maritime Attachment and Garnishment issued by this Court and to release restrained funds.

Defendant's motion is grounded on the mistaken belief that this action seeks security in connection with a claim of $250,000 for funds previously placed in escrow to secure Defendant's claim against Plaintiff for vessel damage and underpayment of charter hire. On the contrary, as stated in the Complaint, Plaintiff's claim is for an overpayment of charter hire and the resultant balance of accounts. The overpayment is not based on the funds held in escrow.

As Defendant's supporting affidavit points out, Defendant time-chartered the ship to Plaintiff, who in turn sub-time chartered it to SK Shipping Singapore Pte. Ltd. ("SK"). The ship was damaged in a collision with a barge during cargo operations. Defendant claims Plaintiff is liable, and Plaintiff denies liability, but also contends that if it is liable, then SK is liable to it. Defendant demanded $250,000 for repair charges and a modest claim for underpayment of hire, and this sum was placed in escrow with Defendant's Hong Kong attorney by SK.

The parties are arbitrating their disputes in Hong Kong. In October 2007, SK submitted its counterclaim against Plaintiff for an overpayment of hire <u>and</u> for a refund of the $250,000 in escrow, for a total of about $481,000. Plaintiff's counsel telefaxed SK's claim to Defendant's counsel and stated: "Please accept their Defence and Counterclaim as ours." (Greenbaum Ex. 1.) The overpayment claimed by SK against Plaintiff and by Plaintiff against Defendant stems from the period of time the ship was out of their service for repairs, called "off-hire." Although Plaintiff's attorney did not specify an amount of its claim against Defendant, it was a simple matter to substitute the rate in the charter between Plaintiff and Defendant in lieu of the rate between Plaintiff and SK. It was an even simpler matter for Defendant to request in the arbitration a more definite statement of Plaintiff's claim, but it never did so.

It can be seen from the large difference between SK's claim against Plaintiff and Plaintiff's claim in this action that Plaintiff's claim does not include the $250,000 in escrow. As shown in the Greenbaum Declaration, Plaintiff's New York attorney consciously excluded this item from this action.

Thus, contrary to Defendant's contention, the Complaint is not for the $250,000 in escrow, but for an overpayment of hire, just as the Complaint states. And, contrary to Defendant's contention, Defendant <u>was</u> apprised of Plaintiff's claim in the arbitration.

601518.00601/6664368v.1

**ARGUMENT**

Defendant's motion to vacate the attachments is without merit and should be denied.

A. **Background of maritime attachment.**

The provisional remedy of maritime attachment is "a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006). Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. "Maritime parties are peripatetic, and their assets are often transitory." Aqua Stoli at 443. Indeed, "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance." Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007) (citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996)). Thus, the policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found ...." Aqua Stoli at 443. "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." Id.

Rule B of the Supplemental Rules for Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets. Rule B provides in relevant part:

> If a defendant is not found within the district, ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

"The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required." Aqua Stoli, 460 F.3d at 438. Supplemental Rule E(4) (f) provides for a prompt hearing as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ....

**B.     The Basic Rule**

In Aqua Stoli, the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the

4

>   plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id. at 445 (footnotes omitted).

Aqua Stoli made clear that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." Aqua Stoli, 460 F.3d at 447. As the Aqua Stoli Court explained, so long as the technical requirements of Rules B and E are met, "an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445.

In so holding, the Second Circuit expressly rejected the reasoning of numerous district court decisions that had engaged in a broader inquiry under Rule E(4) (f), including those that adopted "a needs test," requiring the plaintiff to show that, even if the defendant cannot be found within the district, plaintiff actually needs security in order to collect on an eventual judgment. Aqua Stoli at 446. The Court also rejected the approach taken by the district court in Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994), which "would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." Aqua Stoli at 446-47. Rather, the Court held that "Congress chose a determinate rule rather than a flexible standard to ensure that attachments may be obtained with a minimum of litigation." Id. at 443.

## POINT I
## PLAINTIFF'S BURDEN IS MERELY TO ESTABLISH
## IT HAS PLED A *PRIMA FACIE* CLAIM

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff must make an affirmative showing in the Rule E(4) (f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment. See e.g., Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006). Under this standard, "although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4) (f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." Id. at 325.

Numerous more recent decisions have concluded, however, that a "reasonable grounds" inquiry is wholly inconsistent with the Second Circuit's holding in Aqua Stoli that a plaintiff need only make a *prima facie* showing to sustain an attachment under Rule B. In Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006), the court observed as follows:

> Although Aqua Stoli does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," – including a "valid *prima facie* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.
>
> For a plaintiff to show that "it has a valid *prima facie* admiralty claim against the defendant, in the context of maritime attachment, it appears that a plaintiff need not prove anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. [Citations omitted.]

See also Sixteen Thirteen Marine S.A. v. Congentra A.G., 2008 W.L. 2885307 at *7 (S.D.N.Y. 2008) ("This Court need only be satisfied that STM's claims 'are not frivolous.'" [citation omitted.]; Padre Shipping, Inc. v. Yong He Shipping, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007) (Noting the analysis in Tide Line "is consistent with the limited inquiry contemplated by Aqua Stoli and comports with a basic definition of the term "*prima facie.*"); Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ("The Court agrees with the weight of authority in this district, and will apply the *prima facie* standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4) (f) inquiry' that the reasonable grounds test would necessarily include."); Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee, 2007 U.S. Dist. LEXIS 72694, * 7-8 (S.D.N.Y. 2007) ("Maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing.

Moreover, Aqua Stoli implies that a plaintiff need not provide evidence to satisfy its burden under Rule E(4) (f)." [Citations omitted.]). See also Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007); Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 2007 U.S. Dist. LEXIS 74477, * 22-23 (S.D.N.Y. 2007).

As stated by the court in Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677 at *4 (S.D.N.Y. 2007: "Certainly it is not the office of a motion to vacate a maritime attachment to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure."

## POINT II

### PLAINTIFF HAS MET THE PLEADING STANDARD

Plaintiff's claim is for a balance of accounts under a charter party. The balance stems from an overpayment of charter hire because the ship should be considered "off-hire" for the period of time it was out of service for repairs. That is as simple and straightforward a *prima facie* case as there can be.

Defendant suggests that Plaintiff has no viable claim because Plaintiff allegedly is seeking security for a sum that already is held in escrow. As explained above and in the Greenbaum Declaration, however, Defendant is factually mistaken. The overpaid hire is not at all the same thing as the funds put in escrow.

Defendant also urges an equitable argument based on the contention that Plaintiff supposedly never apprised Defendant of its claim. That is also factually incorrect, because Plaintiff apprised Defendant in the arbitration that Plaintiff was asserting a claim against Defendant that was back-to-back with the claim the sub-charterer, SK, asserted against Plaintiff. While Plaintiff did not state a specific amount, it was just a matter of substitution of rates to ascertain the amount. Moreover, Defendant has no grounds for an equitable argument because Defendant could have requested a more definite statement of the claim in the arbitration at any time in the seven months between being apprised of the back-to-back claim and the date this action was commenced. Defendant did not do so, and may not now plead its supposed ignorance as a defense to Plaintiff's *prima facie* case.

## CONCLUSION

### DEFENDANT'S MOTION SHOULD BE DENIED

Dated: New York, NY
       August 25, 2008

                        BLANK ROME LLP
                        Attorneys for Plaintiff
                        TRANS POWER CO. LTD.

                        By _____
                            Jack A. Greenbaum (JG-0039)
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, NY  10174-0208
                        Tel.: (212) 885-5000
                        Fax: (212) 885-5001
                        jgreenbaum@blankrome.com

601518.00601/6664368v.1

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )

  Allison E. Alexander, being duly sworn deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 25th day of August, 2008, she served the within **JACK A. GREENBAUM DECLARATION IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT** by e-mail to the following:

    Michael E. Unger, Esq. and
    Lawrence J. Kahn, Esq.
    FREEHILL HOGAN & MAHAR, LLP
    Attorneys for Defendant
    J & F Limited
    80 Pine Street
    New York, New York 10005

    E-mail: unger@freehill.com and
       kahn@freehill.com

                _/s/ Allison E. Alexander_
                Allison E. Alexander

Sworn to before me this
25th day of August, 2008

_/s/ Lescene Gibbons_
Notary Public

  LESCENE GIBBONS
 Notary Public, State of New York
    No. 01GI6044509
  Qualified in New York County
Commission Expires July 10, 20_10_

253120.1
525059.00100/6606531v.1