BLANK ROME, LLP
Attorneys for Plaintiff
TRANS POWER CO. LTD.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000
jgreenbaum@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANS POWER CO. LTD., | 08 Civ. 5381(LAP) |
| Plaintiff, | |
| -against- | **DECLARATION IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT** |
| J & F LIMITED, | |
| Defendant. | |

JACK A. GREENBAUM deposes and says:

1.      I am a member of the firm of Blank Rome, LLP, attorneys for the Plaintiff in this maritime attachment action. I am familiar with the underlying claim. This Declaration is submitted in opposition to the Defendant's motion to vacate the maritime attachment herein.

2.      Defendant's application is based on the assertion that this action seeks security for a claim for which funds are already held in escrow, and that Defendant was not previously notified of the claim. Both contentions are incorrect.

3.      As described in the affidavit of Keung Shek Cheung submitted by Defendant in support of its motion to vacate the attachment, Defendant, J&F Limited, time-chartered the M/V VANGUARD ("the Vessel") to Plaintiff, Trans Power Co. Ltd., which in turn sub-time-chartered the Vessel to SK Shipping Singapore Pte. Ltd. ("SK"). The Vessel sustained damage in a

collision with a barge during cargo operations, and was taken out of service for repairs. Defendant claims Plaintiff is liable for the damages to the barge and Plaintiff denies liability, but claims that if there is any "charterer" liability, it ultimately falls on the sub-charterer, SK.

4.     Defendant demanded and received security for repair costs and related charges of $151,871.49, and an alleged underpayment of charter hire in the final balance of accounts in the sum of $79,704.14, plus some interest and costs, totaling $250,000. ("Hire" is the daily rate paid for the use of the Vessel, usually payable each 15 days in advance.) These funds are held by Defendant's Hong Kong lawyer, James Ho & Co. It is this $250,000 which Defendant appears to believe is the subject of Plaintiff's Complaint, but Defendant is mistaken. In fact, Deponent consciously excluded this $250,000 from the Complaint.

5.     As clearly stated in the Complaint, Plaintiff's claim is for an overpayment of hire. The overpayment arose because the Vessel should properly be considered "off-hire" during the period of time it was out of service for repairs, and the cost of fuel oil and diesel oil used during that period should be reimbursed to Plaintiff.

6.     Plaintiff, Defendant, and SK are currently arbitrating their disputes in Hong Kong, pursuant to the terms of the respective charter parties. Defendant asserted a claim against SK for anything for which Plaintiff may be adjudged liable to Defendant with respect to the Vessel damage. On October 24, 2007, SK submitted a revised counterclaim against Plaintiff for an overpayment of hire, plus the $250,000 that SK deposited in escrow. On October 25, 2007, Plaintiff's attorney, SG & Co., telefaxed SK's counterclaim to the arbitrators and to Defendant's attorney, James Y.H. Ho. A copy of SG & Co.'s telefax with the attached counterclaim submission is Ex. 1 hereto.

7.     Plaintiff's attorney, SG & Co., wrote in his telefax (Ex. 1):

We enclosed herewith a fax from HOLMAN FENWICK & WILLAN as well as their Re-Amended Defence and Counterclaim.

Please accept their Defence and Counterclaim as ours. (Emphasis added by us.)

8.     It is true that the charter hire statement Plaintiff had previously sent Defendant showed a smaller claimed balance of accounts, because it had not included the entire off-hire period subsequently claimed by SK. It is also true that Ex. 1 hereto did not state the amount of Plaintiff's counterclaim. For the most part, however, all that was necessary to ascertain the amount of Plaintiff's claim was to look at SK's hire account in Ex. 1 and substitute the daily charter hire rate in the charter between Plaintiff and Defendant in lieu of the slightly greater rate in the charter between Plaintiff and SK. Further, Defendant could have asked in the arbitration for a more definite statement of the claim, but did not do so.

9.     Further, comparing the amount of SK's claim to the amount of the Complaint in this action should make it obvious that the Complaint does not include the $250,000 held in escrow. SK's claim in the arbitration is for $481,473 including the $250,000 SK placed in escrow. The Complaint herein is for only $251,033 plus interest and costs. SK's claim for overpayment of hire, excluding the funds held in escrow, is $231,473. The small difference between Plaintiff's overpayment claim against Defendant and SK's overpayment claim against Plaintiff is due to the difference in charter hire rates and a few other minor differences between the respective hire accounts.

10.    For the sake of good order, attached hereto is Plaintiff's hire account on which the Complaint is based. Although it indicates it was prepared on May 22, 2008, Plaintiff does not contend this particular statement was sent to Defendant. Comparing lines 17-23 of SK's hire

347425.1
601518.00601/6664164v.1

3

account in Ex. 1 with lines 4a and 5 of Plaintiff's hire account in Ex. 2 makes clear that virtually the same off-hire periods for repairs and for taking on fresh water ("fw") are claimed in both accounts. The other items, such as hold cleaning, on-hire and off-hire surveys, and Owner's expenses, are common to both hire accounts, but some of the rates differ in the two charters (e.g. hold cleaning is $2,000 in the charter between SK and Plaintiff, and $1,000 in the charter between Plaintiff and Defendant.)

11.    Ex. 3 hereto is the hire account Plaintiff had previously sent to Defendant. The only significant difference between Ex. 2 and Ex. 3 is the amount of time the ship is considered to be off-hire for repairs (line 4), because Plaintiff made its claim in this regard back-to-back with the claim it received from SK.

12.    The Cheung affidavit further asserts that Plaintiff has not submitted any evidence in support of its claim in the arbitration. However, the arbitration is still in the documentary discovery phase, which is near conclusion. In any case, Defendant has certainly known since October 25, 2007 what period of off-hire time is in dispute and has always known the reason for the dispute.

13.    It is respectfully submitted that Defendant was sufficiently apprised of Plaintiff's claim on October 25, 2007, and certainly could have asked for a more definite statement of the claim in the seven months that passed between October 25 and the date this action was filed on June 12, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, N. Y. on August 25, 2008

_____
JACK A. GREENBAUM    (JG-0039)

347425.1
601518.00601/6664164v.1

4

# EXHIBIT 1

900200.00001/6591567v.1

# Fax



**SG&CO**

上海市华利律师事务所
Suite A1-B1 20ᵗʰ Floor, Jiangsu Mansion, 778 DongFang Rd,
Pudong Shanghai, 200122 P.R.China
Tel: 86-21-68868018, 68868350    Fax: 86-21-68868588
Web: www.sg-co.com    Email: sgco@sg-co.com
中国上海浦东东方路778号江苏大厦20楼A1-B1座 邮编:200122

| | | | |
|---|---|---|---|
| **TO** : Mr. Yiu Kei Chan | | **FAX NO.:** 00852 27114489 |
| **TO** : Mr. Robin Peard | | **FAX NO.:** 00852 21035074 |
| **CC** : JAMES HO & CO | | **FAX NO.:** 00852 3421 1229 |
| **ATTN:** Mr. James Y.H. Ho | | **YR REF.:** S041/06 |
| **CC:** Xiamen Xiling Shipping Co.Ltd. | | **FAX NO.:** 86 592 238 9539 |
| **ATTN:** Mr. Reao Zhong | | **YR REF.:** Please advise |
| **FROM:** Roger Miao | | **FAX NO.:** 021-6886-8588 |
| | | **Email :** rogerm@sg-co.com |
| **NO. OF PAGES (including this page):** 1+14 | | **OUR REF:** 20070926-67/SG/RM |
| | | **DATE** : October 25, 2007 |

## CONFIDENTIALITY NOTICE

This facsimile message and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, any unauthorized use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error, please immediately notify us by telephone on (8621) 6886 8018 and destroy this facsimile and any copies as soon as possible. Thank you.

**Re: MV "Vanguard", C/P dated 23.02.2006**
**J&F Limited/Trans Power Co., Ltd.**

We enclosed herewith a fax from HOLMAN FENWICK & WILLAN as well as their Re-amended Defence and Counterclaim.

Please accept their Defence and Counterclaim as ours.

Best regards,

SG&Co.

# HOLMAN FENWICK & WILLAN
Solicitors
夏禮文律師行

15th Floor
Tower One, Lippo Centre
89 Queensway
Hong Kong

| | |
|---|---|
| G. Q. Gray* | P. P. C. Young** |
| H. J. Livingstone* | C. S. Lockwood* |
| G. M. T. Edding* | H. C. H. Fung** |
| G. J. V. Hardcastle* | R. J. Wilmot |
| N. D. Campbell* | G. D. Lamplough |
| P. J. Harper | P. T. Murphy |
| H. W. Dunlop | A. P. Apostolis |

Consultants:
A. J. Jex †          P. Rees Smith*

Telephone +852 2522 3006
Fax +852 2877 8110

holmans@hfw.com.hk
DX-9031-IC

**www.hfw.com**

Your Ref                    Our Ref    HWD/VPL/2730832

Date    24 October 2007

Mr Robin Peard
19th Floor, Prince's Building
10 Chater Road
Central
Hong Kong

Mr Yiu Kei Chan
Room 13, 4th Floor
Shing Tak Mansion
11-12 Peace Avenue
Kowloon
Hong Kong

Dear Sirs

**Re:    M.V. "VANGUARD" – C/P dd. 23.02.2006**
**Trans Power Co. Ltd / SK Shipping (Singapore) Pte Ltd**

We enclose the Re-amended Defence and Counterclaim of SK Shipping (Singapore) Pte Ltd in this reference.

For avoidance of doubt, the new changes are shown in RED colour. Previous amendments are shown in BLUE colour. The only amendments of substance are the Respondents' (Charterers') counterclaim against the Claimants incorporating the revised Final Hire Statement, a copy of which was also attached to our fax of 17 October.

Yours faithfully

**HOLMAN FENWICK & WILLAN**
Encl.

**BY FAX +86 21 6886 8588 AND AIRMAIL**

Cc:    SG & Co
Suite A1-B1, 20th Floor Jiangsu Mansion
778 DongFang Rd
Pudong
Shanghai 200122
CHINA

**Chambers Global Shipping Law Firm of the Year**

HFW/DX/1/500784/1

**London Office**
Marlow House, Lloyds Avenue, London EC3N 3AL, United Kingdom. Tel +44 (0)20 7488 2300  Fax +44 (0)20 7481 0316  holmans@hfw.co.uk

| Associated Offices: | Paris | Rouen | Piraeus | Dubai | Shanghai | Singapore | Melbourne |
|---|---|---|---|---|---|---|---|
| *Not ordinarily resident | | | †Notary Public | | **China-Appointed Attesting Officer | | |

24/10 2007 WED 20:50  [TX/RX NO 6033]  ☑001

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>
<u>AND</u>
<u>IN THE MATTER OF AN ARBITRATION</u>

B E T W E E N :

## TRANS POWER CO LTD

<em><u>The Claimants</u><br><u>(Disponent Owners)</u></em>

and

## S.K. SHIPPING (SINGAPORE) PTE LTD

<em><u>The Respondents</u><br><u>(Charterers)</u></em>

## <u>VANGUARD – C/P dd 23.02.2006</u>

---

## <u>RE-AMENDED</u> DEFENCE AND COUNTERCLAIM

---

1       References hereafter to "Paragraph(s)" are to paragraphs in the letter of 31st October 2006 from Xiamen Xiling Shipping Co., which contain the Claim Submissions of Trans Power Co. Ltd unless otherwise stated. The notation "‡" refers to a paragraph number in the Statement of Claim of J&F Limited ("J&F") which the Claimants have incorporated by reference.

2       The Respondents deny that the Tribunal has jurisdiction to determine whether the US$250,000 mistakenly provided by the Respondents to J&F's solicitors may be withdrawn by J&F. It is not clear whether the Claimants are seeking to pass on a claim in respect of the monies paid by mistake but in so far as they are seeking to do so it is denied that the Tribunal has jurisdiction to deal with the matter and everything that follows is without prejudice to that denial.

3       The Charterparty dated 23rd February 2006 referred to in Paragraph 2 is enclosed with this letter and marked "A". <u>The Respondents will rely on this Charterparty at arbitration as may be necessary as if the same had been set out in this pleading <em>verbatim</em>. Without prejudice to the generality of the foregoing the Respondents rely upon the following clauses:-</u>

1

*"Additional clauses:-*

*46  Master to immediately advise Charterers by telex and stevedores by written notice of any damage done to the vessel also to notify parties doing the damage and endeavour to obtain their admission of liability.  Such notice of damage(s) to be given upon occurrence or as soon as possible thereafter but latest by 24 hours of occurrence otherwise Charterers not to be responsible .  Undetectable damages should be reported as soon as possible when found, but not later than vessel's redelivery.  Copies of correspondence together with the additional letter acknowledging liability, if obtained, to be sent to Charterers as early as possible, provided such damage is readily discernable.*

*Stevedores, although appointed by Charterers, Shippers, Receivers or Agents, to be under the direction and control of the Master.  Claims for damages to the vessel occurring during loading and discharging or at any time during the voyage due to improper or negligent stowage of the cargo to be settled directly between Owners and stevedores.  If settlement of damages cannot be finalized with stevedores within a reasonable time, then Owners can apply to Charterers/ Shippers/ Receivers who will be responsible for settlement.  Such damage to be repaired at stevedores' / Charterers' time and expense as/when required by classification society or if affecting vessel's seaworthiness and full working capacity.  In case these damages together with those other damages which may be deferred, if so requested by Charterers, will be repaired at next drydocking in Owners' time but at stevedores'/ Charterers' expense, provided this does not interfere with Owners' repair work  or otherwise in stevedores' or Charterers' / Shippers'/ Receivers' time as above provided.  Owners to provide Charterers with all assistance to enable them to recover damages from stevedores.*

...

*62  Charterers shall not be liable for loss of life or personal injury nor arrest or seizure or loss or damage to the vessel and/or other objects arising from perils insured against by Owners' policies of insurance, provided that above mentioned loss/injury/arrest/ seizure/damage are not caused by Charterers.*

...

*92  All additional costs/arrangements (including arranging fenders to put between vessels), time/responsibility arising from this double bank operation to be for Charterers risk and account.*

*Number, type and positioning of fenders always to be to Master's satisfaction and Master may move vessel away or order the other vessel away at any time if he considers conditions unsuitable.  Any additional premium payable on hull and machinery insurance for such operation to be for Charterers' account.*

*Charterers to indemnify Owners/ vessel against all cargo claims and subsequent to such operations.  Charterers to give owners due notice of their*

> *intention to perform such operation advising approximate type and quantity of cargo involved, destination of cargo and location of operation.*
>
> ..."

The documents referred to in paragraph 2 are admitted.

4    Paragraph 3 is admitted.

5    The first three sentences of paragraph 4 are admitted. It is also admitted that Attachment 4 (i.e. the Claimants final hire statement) was sent to the Respondents. It is denied that the Respondents are liable to pay the sums set out in that statement to the Claimants.

6    The Respondents aver that they were entitled to make the deductions shown in their final hire statement referred to in Paragraph 5 and that they are not liable for the repair costs which form the substance of J&F's Claim. If and to the extent that it is claimed that Class required the Vessel to be repaired before she sailed the Claimants are put to strict proof of this and it is not admitted.

7    As to the facts and matters alleged by J&F in their "Statement of Claim", which the Claimants have incorporated by reference:-

(1)    At all material times the Vessel was let by the Respondents to Essar Shipping Ltd ("Essar") pursuant to a time Charterparty in NYPE form dated 8th May 2006 which is back to back with the Charterparty referred to above. The Respondents have commenced an arbitration against Essar, passing on the allegations made against the Respondents *mutatis mutandis*.

(2)    At the time of writing Essar's response to the Respondents' claim submissions has not been received. The Respondents therefore serve this defence in order to comply with the Tribunal's order of 16th December 2006 but do so subject to their right to amend this defence in light of Essar's case as soon as reasonably possible after Essar's case becomes known. What follows should therefore be regarded as tentative.

600767-1                                3

8    The Respondents do not comment upon paragraphs 1-3 of J&F's Statement of Claim save that the terms of the charterparty there quoted are back to back with the charterparty concluded between the Claimants and the Respondents and between the Respondents and Essar.

8A   As to ‡ 4, please see below generally. Without prejudice to the generality of the foregoing the Respondents are not liable to the Claimants for any loss caused by the alleged damage to the Vessel's hull and bulwark because:-

     (1)    The alleged damage to the Vessel was caused by a peril insured by the hull underwriters. The Respondents are not liable for any alleged damage to the Vessel by virtue of Clause 62.

     (2)    Clause 92 required the Charterers to pay any additional premium on hull and machinery insurance for double bank operation. Upon proper construction of clauses 62 and 92:

            (a)    The "cause" stated in the proviso of Clause 62 shall mean the "proximate cause" in the context of marine insurance. The damage to the vessel was proximately caused by the perils of the sea and/or Master's negligence in supervising the double bank operation and/or other perils insured by the insurance policies of the Owners/Claimants.

            (b)    No consideration shall be taken as to whether the damage happened during the time the Vessel was to carry out the orders as to her employment given by Charterers/ Respondents because the double bank operation was specifically insured at the additional expenses, if any of Charterers/ Respondents.

9    It is not admitted that the Owners of the ABG Pioneer were the agents of the Respondents as alleged in ‡ 5, nor that the Respondents are "responsible for" the acts or omission of the Owners of the ABG Pioneer.

10   ‡ 6 appears to allege that the Respondents are vicariously liable for the acts or omissions of the Master of the ABG Pioneer. This is not admitted and the basis of this

600767-1                                          4

allegation is not understood.    For the avoidance of doubt, it is denied, if it be so
alleged, that the Master of the ABG Pioneer was the employee of the Respondents.

11      ‡ 7 is not admitted as a matter of law but, in any event, it is irrelevant to the present
case.  It is not suggested that the discharge port at Hazira was unsafe at the time it
was nominated.  Line 27 of the Charterparty between Trans Power and SK Shipping
was deleted by the parties, signifying that no safe port warranty was given.

12      As to paragraph ‡8:-

(1)     Even if the Master of the ABG Pioneer was negligent in the performance of the
discharge operation this would not render the port unsafe.

(2)     It is not admitted that the Master of the barge was negligent or in breach of duty
of care or in breach of statutory duty as alleged.  None of the particulars of
incompetence are admitted.    Further or alternatively it is averred that the
Master of the "Vanguard" caused the loss/ damage and/or was contributorily
negligent in :

(a)     failing to order the cessation of discharge and the ABG Pioneer to move
away at an earlier time; and

(b)     failing to make proper and careful use of fenders in sufficient quantity
and in position to prevent and/or minimise damage; and

(c)     allowing discharge to commence without adequate fendering.

(3)     As the Master of the "Vanguard" did approve and supervise the lightening and
double bank operation, the Master accepted the said operations were carried
out in a safe anchorage and were carried out safely;

(4)     By accepting the double bank operation, the Master of the "Vanguard" must
have satisfied himself of the suitability of the number, type and positioning of
fenders.  The Master was supervising the double bank operation pursuant to
clause 91 of the Charterparty;

     (5)    <u>As to how and when the barge should approach and/or leave the Vessel, they were matters going to the navigation and management of the Vessel, instead of the employment of the Vessel by the Respondents;</u>

     (6)    <u>Bad weather indeed started at 2115 of 24 May 2006, getting worse and the Vessel rolled heavily from 11.30 on 25th May 2006 as per the Statement of Delays/Detention of the M. V. Vanguard *Annex B to the attachments to this pleading marked "B"*. The Master of the "Vanguard" should not have allowed the barge to come along side and start discharging at 2020 on 26th May 2006 (as alleged by the Master) because he should have foreseen that the swell would be heavy in a very short period of time. It turned out that it was too late for the Master to ask the barge to leave at 2140 (just around 1 hour 20 minutes after the commencement of the discharge) on the same day; and</u>

     (7)    <u>The alleged damage was caused by the severe delay of the Vessel's discharge caused by the poor performance of the Vessel's cranes (Annex B) and early monsoon coming to the port</u>

13    ‡9 is denied. Even if there was a sudden force 5 wind, this would not, of itself, render a port unsafe.

14    ‡10 is not understood and is not admitted.

15    The Claimants are invited to re-consider whether they wish to continue with the allegation that Hazira was an unsafe port. If they continue with this allegation the Respondents put the Claimants on notice that they will seek an issue based costs order against them relating to all costs of and incidental to the allegations that Hazira was an unsafe port. The pleaded case does not reveal an arguable case of breach of the obligation to nominate a safe port. The Claimants are asked to confirm whether they continue to rely upon the unsafe port case within 28 days of the date of serving this defence. If they do, the Respondents will then ask them for further and better particulars of their case.

16    ‡12 is accordingly not admitted. The Respondents cannot plead further to ‡12 until the Claimants state what it is about Hazira which they allege made it prospectively unsafe at the time it was nominated.

600797-1

6

17    No admission is made as to the extent of the damage suffered by the Vessel whilst on
      charter to the Respondents: the Claimants are put to strict proof of same.  It is
      admitted that the Vessel was damaged whilst on charter to the Respondents and
      redelivered in a damaged condition.  ‡13 is otherwise denied. (The reference to
      breaching the provision of clause 4 twice is not understood. The *Puerto Buitrago* is of
      no relevance to the present case).

18    ‡14 merely repeats allegations made previously in the Statement of Claim and is
      denied/ not admitted as set out above.

19    ‡15 is not admitted.

20    ‡16 is not admitted: see paragraph 12 above. Further or alternatively, if the conditions
      were not safe the Master could and should have declined to permit the discharge
      operation as was his right under the charterparty.  In failing to do so he caused or
      contributed to the loss or damage claimed and any sum or sums to be awarded to the
      Claimants should be reduced accordingly.  In the yet further alternative, clauses 91
      and 92 are subject to clauses 62 and 46.  Clause 62 provides a complete defence to
      the Respondents.

21    ‡17 is denied.  Clause 92 is not admitted.  As far as is known the incident did not give
      rise to a cargo claim.

22    ‡18 is not admitted.

23    ‡19 is not admitted.  For the reasons given above the Respondents are not liable to
      indemnify the Claimants.  Without prejudice to the generality of the foregoing, the
      heavy weather and/or the perils of the sea and/or the negligence of the Master were
      the cause or causes of the contact of the ABG Pioneer with the Vessel and Charterers
      /Respondents are not liable to indemnify the Claimants for the loss caused by such
      contact.

24    ‡20 is not admitted .

25    ‡21 is denied.  It is for the Claimant to prove his claim.

7

26    ‡22 -24 are denied. <u>Without prejudice to the generality of this denial the Respondents will rely on the facts and matters set out in paragraphs 21, 22, 26, 29, 31-34 of Tsui & Co's letter of 14th May 2007 and the documents referred to therein, a copy of which is attached to this pleading marked "B" as if the same had been set out verbatim in this pleading.</u>

27    <u>In the premises</u> ‡25 is not admitted. <u>Without prejudice to the generality of the foregoing</u>

    <u>(1)</u>    <u>The Claimant is required to prove that each item listed was incurred and paid and related to repairs which were necessitated by the barge damage during discharge as opposed to pre-existing damage.</u>

    <u>(2)</u>    <u>Further to the extent that time was lost repairing damage which existed before 26th May 2006 or carrying out repairs which could and should have been left until the Vessel's next drydocking the Respondents are not liable for same.</u>

28    The Respondents do not plead to ‡26-27 which are between Head Owners/J&F and the Claimants and do not involve the Respondents.

29    As to ‡28, without prejudice to the Respondents' submission regarding jurisdiction, the Respondents aver that J&F are correct when they say that the USD250,000 provided by the Respondents was not provided in satisfaction of the Claimant's duty to provide security. The USD250,000 was paid by the Respondents into an escrow account by mistake. They mistakenly believed that James Ho & Co, solicitors in Hong Kong, represented the Claimants. Only after the payment had been made did ~~T~~the Respondents discover that this was not the case and that James Ho & Co represented J&F. If the Tribunal has jurisdiction to do so, it should order the Claimants to do all they can to procure the return of the money paid by mistake to the Respondents.

30    ‡29 is not admitted.

31    The arbitration is subject to English law. Therefore the provisions referred to in ‡30, ‡31 and 33 are not applicable.

32    ‡32 contradicts ‡28, as to which see above.

8

33    The UNCITRAL rules are not applicable. ‡34 is therefore denied.

34    In the premises it is denied that the Claimants are entitled to the repair costs alleged in ‡35.

---

## COUNTERCLAIM

---

35    The Respondents repeat the Defence set out above.

35A    The Charterparty further provided inter alia as follows:-

> "Clause 15   That in the event of the loss of time from… damages to hull, machinery or equipment… detention by average accidents to ship… or by any other cause not excepted in this Charter party preventing the full use of the vessel to Charterers working of the vessel, the payment of hire shall cease for the time thereby lost…"
>
> …
>
> "Clause 18 "…. the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once."

36    In the premises of paragraphs 3 to 19 above the Claimants are liable for the loss and /or damages caused by the Master's negligence and such sums should be set off to diminish or extinguish the Respondents' liability to the Claimants (if any).

36A    By reason of the incident at Hazira on 26 May 2006 and the resulting repairs to the Vessel, the full use of the Vessel to Charterers' working of the Vessel (sic) was prevented and time was lost to Charterers.  Particulars of such loss of time appear from Charterers' final hire statement dated 15 October 2007, a copy of which is served herewith as Annexure "C".  Pursuant to Clause 18 of the Charterparty, the Claimants are liable to return the said sums by way of overpaid hire at once.

36B    Further, and in any event, by reason of the matters referred to at paragraph 24 above (but always without prejudice to paragraph 2 above), the Claimants are liable to repay to the Respondents the said sum of USD250,000 paid at the Claimants' request to the bank account of James Ho & Co.

37   The Respondents will claim interest on all sums due to them from the Claimants in accordance with the <u>Arbitration Act 1996 based on USD LIBOR + 2.5% compounded quarterly</u>.

38   And the Respondents <u>counterclaim</u>:-

(1)   A declaration that they are not liable to the Claimants; and/or

(2)   Damages; and/<u>or</u>

<u>(2A)   Overpaid hire; and</u>

(3)   Interest; and

(4)   Costs.

~~Dated 12th day of January 2007~~

~~GRAHAM CHARKHAM~~

~~Re-dated the 22nd day of June 2007~~

~~GRAHAM CHARKHAM~~

<u>Re-dated the 24th day of October 2007</u>

**HOLMAN FENWICK & WILLAN**

<u>RE-SERVED this 24th day of October 2007 by Holman Fenwick & Willan of 15/F, Tower One, Lippo Centre, 89 Queensway, Hong Kong, Solicitors for SK Shipping (Singapore) Pte Ltd.</u>

600767-1                              10

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND**
**IN THE MATTER OF AN ARBITRATION**

B E T W E E N :

**TRANS POWER CO LTD**

*The Claimants*
*(Disponent Owners)*

and

**S.K. SHIPPING (SINGAPORE) PTE LTD**

*The Respondents*
*(Charterers)*

**VANGUARD – C/P dd 23.02.2006**

---

**RE-AMENDED DEFENCE AND COUNTERCLAIM**

---

Dated the 24th day of October 2007

**HOLMAN FENWICK & WILLAN**
Solicitors for the Respondents
15/F, Tower One, Lippo Centre
89 Queensway
Hong Kong
Tel : 2522 3006
Fax: 2877 8110
Ref: HWD/VPL/2730832
500767_1.DOC

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND**
**IN THE MATTER OF AN ARBITRATION**

B E T W E E N :

### TRANS POWER CO LTD

*The Claimants*
*(Disponent Owners)*

and

### S.K. SHIPPING (SINGAPORE) PTE LTD

*The Respondents*
*(Charterers)*

### VANGUARD – C/P dd 23.02.2006

---

### ANNEXURE "C" TO
### RE-AMENDED DEFENCE AND
### COUNTERCLAIM

---

**HOLMAN FENWICK & WILLAN**
Solicitors for the Respondents
15/F, Tower One, Lippo Centre
89 Queensway
Hong Kong
Tel : 2522 3006
Fax: 2877 8110
Ref: HWD/VPL/2730832

**SK SHIPPING (SINGAPORE) PTE LTD**

9 Raffles Place #51-02 Republic Plaza Singapore 048619
Interoot Email : ysjroot@skshipping.com, mcvat@skshipping.com
TLX : RS36607YKLINE

Tel : (65) 6327-6626
Fax : (65) 6327-6466

| TO : | Sinolink Shipping | | Date : | 15-Oct-07 |
| C/O: | Howe Robinson HK | | | |
| Attn: | Mr Tim Tang / Andora | | | |
| FM : | SK Shipping (S )Pte Ltd | | | |
| RE : MV. | **Vanguard** C/P dated 23rd Feb 2006 | | | |

*PLS FIND OUR FINAL HIRE STATEMENT FOR SAID VESSEL ASF:*

| Hire From | 06-3-3 6:48 | BSD GMT | | |
| To | 06-8-2 14:18 | 9SD GMT | APS Jiangyin | |
| Total duration | 152.354167 | Days | | |
| Brokerage | 0.00% | | Daily Hire | 9000 |
| add comm | 2.50% | | | |
| IFO Price | 310PMT | | MDO Price | 520PMT |

| | Time complaind during as Hazira to dhep Mumbai due to vsl repairs at Mumbai<br>04th Jun 1400L - 08th Jul 1612L 34.0916 days | | | |
| --- | --- | --- | --- | --- |
| OFF HIRE | Offhire for own time taking of FW at Sgp 0.24303 days | | 34.33456 DAYS | |
| 1. Hire due to Owners | | | DR | CR |
| | 9000PDY | x118.0195Days | | 1,062,175.65 |
| Less | | 2.50% Comm | 26,554.39 | |
| 2. BOD | IFO | 454.700MT | | 140,957.00 |
| | MGO | 90.590MT | | 47,106.80 |
| 3 BOR | IFO | 452.760MT | 140,355.80 | |
| | MGO | 90.510MT | 47,065.20 | |
| 4. ILOHC | | | | 4,000.00 |
| 5. CVIE | | USD1,100 | | 4,327.38 |
| 6. Intermediate Hold Cleaning   Lupail – Mpuritus | | | | 2,000.00 |
| | Sur - Mundra | | | 3,000.00 |
| | Mundra - BIK | | | 2,000.00 |
| | Shuaiba - Bahrain | | | 4,000.00 |
| | Mina Saqr - Hazira | | | 2,000.00 |
| | New Mangalore - Nanjing | | | 2,000.00 |
| 7. Agreed compensation for petcoke loading - lumpsum | | | | 20,000.00 |
| 8. AP for Lupail | | | | 1,875.00 |
| 9. Ows expenses Lupail ( watchmen and Medical Peso 12,300 ) | | | 233.705 | |
| 10. Ows expenses FW 200mt (RS 38985 x 0.03128) | | | 1,153.74 | |
| 11. Ows expenses at New Mangalore (Courier) | | | 31.71 | |
| 12. Ows expenses at Singapore (FW) | | | 1,631.51 | |
| 13. Ows expenses at Monrovia (Stores, certi. medical, FW) | | | 1,317.44 | |
| 14. Owner expenses at Shuaiba | | | 343.17 | |
| 15. Owner expenses at Bahrain | | | 1,190.88 | |
| + 2.5% for all owner expenses | | | 143.06 | |
| 16. Joint onhire survey fee ( 900 / 3 ) | | | . | 300.00 |
| 17. Add bunker con during vsl waiting repairs at Mumbai: 34.0916 x MDO 1.0ml x 520 | | | 17,727.63 | |
| 18. Add bunker con during vsl waiting repairs at Mumbai: 34.0916 x IFO 1.0m) x 310 | | | 10,568.40 | |
| 19. Add bunker con during for FW: 0.24305 x MDO 1.0ml x 520 | | | 126.39 | |
| 20. Add bunker con during for FW: 0.24305 x IFO 1.0ml x 310 | | | 75.35 | |
| 21. Credit steaming time from Hazira - Mumbal 136Nm – 0.45 days x US$9000.00 | | | | 4,050.00 |
| 22. Less bunkers fo cons Hazira - Mumbai 0.45 days x 22.5mt x US$310 | | | 3,138.75 | |
| 23. Less bunkers mdo cons Hazira - Mumbai 0.45 days x 1.0 ml x US$520 | | | 234.00 | |
| 24. Cash Advance to James Hq & Co at Ows request for Lien On Cargo by Head Ows | | | 250,000.00 | |
| 25. Less paid | | 04th Mar 2006 | 316,851.30 | |
| | | 10th Mar 2006 | 133,082.50 | |
| | | 03rd Apr 2006 | 134,175.00 | |
| | | 17th Apr 2006 | 132,175.00 | |
| | | 03rd May 2006 | 102,069.37 | |
| | | 16th May 2006 | 191,364.63 | |
| | | 27th June 2006 | 124,119.74 | |
| | | 12th July 2006 | 134,175.00 | |
| | | 24th July 2006 | 13,692.98 | |
| | | | 1,703,637.61 | 1,302,164.59 |
| AMT DUE TO CHRTRS | | BALANCE | | 401,473.02 |
| | | TOTAL | 1,703,637.61 | 1,703,637.61 |

Pls kindly remit to the flwg bank details :

STANDARD CHARTERED BANK, NEW YORK
(SWIFT ADDRESS: SCBLUS33)
STANDARD CHARTERED BANK, SINGAPORE
(SWIFT ADDRESS: SCBLSGSG)
IN FAVOR OF SK SHIPPING (S) PTE LTD
ACCOUNT NO: 017417945P
REF : MV VANGUARD

MANAGING DIRECTOR

# EXHIBIT 2

# TRANS POWER CO.,LTD.

| reference: | 06006-hire breakdown | date: | 2008-5-22 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| vessel: | MV VANGUARD | | c/p date: 2006-2-23 |
| owners: | J & F LIMITED | | |
| delivery: | DLOSP SHANGHAI 2006-3-3 5:48 GMT with 454.70 MT IFO + 90.59 MT MDO | | |
| redelivery: | APS JIANGYIN 2006-8-2 14:18 GMT with 452.75 MT IFO + 90.51 MT MDO | | |

| description | | | | | due to charterers | due to owners |
|---|---|---|---|---|---|---|
| 1 charter from | 2006-3-3 5:48 | - | 2006-8-2 14:18 GMT | | | |
| hire days | 152.354167 | x | US$8,500.00 PDPR | | | 1,295,010.42 |
| address commission | 3.75% | x | | | 48,562.89 | |
| 2 bunkers on delivery | | | | | | |
| IFO/MT | 454.700 | x | US$310.00 P/MT | | | 140,957.00 |
| MDO/MT | 90.590 | x | US$520.00 P/MT | | | 47,106.80 |
| bunkers on redelivery | | | | | | |
| IFO/MT | 452.750 | x | US$310.00 | | 140,352.50 | |
| MDO/MT | 90.510 | x | US$520.00 | | 47,065.20 | |
| 3 off-hire, crane breakdown | | | | | | |
| crane no. 2 at mundra | 2006-4-15 13:30 | - | 2006-4-15 16:00 LT | | | |
| crane no. 1 at hazira | 2006-5-25 10:15 | ~ | 2006-5-25 11:15 LT | | | |
| crane no. 3 at hazira | 2006-5-25 8:30 | - | 2006-5-25 9:30 LT | | | |
| | 2006-5-25 11:00 | - | 2006-5-25 17:00 LT | | | |
| crane no. 2 at hazira | 2006-5-27 12:30 | - | 2006-5-28 21:45 LT | | | |
| sub-total | 1.822917 | | | | | |
| 1/4 off-hire | 0.455729 | x | US$8,500.00 PDPR | | 3,873.70 | |
| address commission | 3.75% | x | | | | 145.26 |
| IFO/MT-1.0 per day | 0.46 | x | US$310.00 P/MT | | 141.28 | |
| MDO/MT-1.9 per day | 0.87 | x | US$520.00 P/MT | | 450.26 | |
| 4a off-hire, vessel not under charterers' control from discharging completion at hazira to dlosp mumbai after repairing | | | | | | |
| | 2006-6-4 7:00 | - | 2006-7-8 16:12 | | | |
| | 34.383333 | x | US$8,500.00 PDPR | | 292,258.33 | |
| address commission | 3.75% | x | | | | 10,959.69 |
| BOR at COP hazira 671.34 mt ifo + 89.12 mt mdo, BOR at DOP mumbai 631.65 mt ifo + 38.33 mt mdo | | | | | | |
| IFO/MT | 39.69 | x | US$310.00 P/MT | | 12,303.90 | |
| MDO/MT | 50.79 | x | US$520.00 P/MT | | 26,410.80 | |
| 4b saved distance from mambai to new mangalore 125 nm (hazira-new mangalore 512 nm - mambai-new mangalore 387 nm) | | | | | | |
| 125/(12.5-0.5)/24 | 0.434028 | x | US$8,500.00 | | | 3,689.24 |
| address commission | 3.75% | x | | | 138.35 | |
| IFO/22.5 mt daily | 9.77 | x | US$310.00 P/MT | | 3,027.34 | |
| MDO/1.0 mt daily | 0.43 | x | US$520.00 P/MT | | 225.69 | |
| 5 off-hire, owners' replenishing fw at singapore | | | | | | |

|   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|
| | 5.833 hours | 0.243042 | x | US$8,500.00 | PDPR | 2,065.85 | |
| | address commission | 3.75% | x | | | | 77.47 |
| | IFO/MT-1.0 per day | 0.24 | x | US$310.00 | P/MT | 75.34 | |
| | MDO/MT-1.0 per day | 0.24 | x | US$520.00 | P/MT | 126.38 | |
| 6 | C/E/V | 117.272062 | | US$900.00 | PMPR | | 3,469.97 |
| 7 | joint on-hire survey charge (usd900/3) | | | | | 300.00 | |
| | joint off-hire survey charge (usd900/3) | | | | | 300.00 | |
| 8 | intermediate hold-eleaning/ILOHC | | | | | | |
| | lugait, philippines - port louis, mauritius (cement) | | | | | | 1,000.00 |
| | sur, oman - mundra, india (urea) | | | | | | 1,000.00 |
| | mundra, india - b.i.k., iran (steel pipes) | | | | | | 1,000.00 |
| | shuaibai, kwait - alba jetty, bahrain (petcoke) | | | | | | 1,000.00 |
| | mina saqr, U.A.E. - hazira, india ( limestone ) | | | | | | 1,000.00 |
| | ILOHC, new mangalore - nanjing (iron ore) | | | | | | 4,000.00 |
| 9 | agreed compensation for petcoke loading ( lump sum) | | | | | | 10,000.00 |
| 10 | AP for calling lugait (8-11/3/2006) | | | | | | 1,875.00 |
| | AP for calling bahrain (2-9/5/2006) | | | | | | 1,875.00 |
| 11 | OWNERS' EXPENSES | | | | | | |
| | lugait - watchman and medieal PHP 12300 | | | | | 240.00 | |
| | 200 fw (RS 36885 x 0.03126) | | | | | 1,153.74 | |
| | new mangalore - courier | | | | | 31.71 | |
| | singapore - fw | | | | | 1,531.54 | |
| | monrovia - stores, certificates, medical, fw | | | | | 1,317.44 | |
| | shuaiba | | | | | 343.17 | |
| | bahrain | | | | | 1,190.68 | |
| | outlay commission on owners' expenses | | | | | 145.21 | |
| 12 | charterers' hire payment | | | | | | |
| | 1st hire paid on 2006-3-6 | | | | | 310,926.39 | |
| | 2nd hire paid on 2006-3-17 | | | | | 123,162.59 | |
| | 3rd hire paid on 2006-3-31 | | | | | 123,162.59 | |
| | 4th hire paid on 2006-4-14 | | | | | 125,162.59 | |
| | 5th hire paid on 2006-4-30 | | | | | 123,949.53 | |
| | 6th hire paid on 2006-5-16 | | | | | 124,162.59 | |
| | 7th hire paid on 2006-6-5 | | | | | 137,878.76 | |
| | 8th hire paid on 2006-6-16 | | | | | 123,162.59 | |
| | 9th hire (breadown as on 2006-6-30) | | | | | 0.00 | |
| | 10th hire (breakdown as on 2006-7-24) | | | | | 0.00 | |

| | | | |
|---|---|---|---|
| Sub-total: | | 1,775,198.94 | 1,524,165.84 |
| **Amount in charterers' favour:** | | | **US$251,033.10** |
| Grand-total: | | 1,775,198.94 | 1,524,165.84 |

**E.&O.E.**

Be payable to:

correspondence ban Wachovia Bank N.A. New York, U.S.A.

chips ABA:        0509

swift code:        PNBPUS3NNYC

beneficiary bank:    Xiamen International Bank, Xiamen
International Plaza, 8-10 LuJiang Road, Xiamen 361001 China

swift code:        IBXHCNBA

in favor of:        Trans Power Co., Ltd.

USD A/C NO:     9830 313 001 387

REF: MV VANGUARD/TRANS POWER-HIRE OVERPAYMENT

# EXHIBIT 3

# TRANS POWER CO.,LTD.

3B NO.36,YIBIN ROAD, HULI DISTRICT,XIAMEN 361012, CHINA

Tel: (86)592 5038463/5088734/5088534/      Fax: (86)592 5088634

Internet Email: shipping@transpower.cn    Telex: (051) 94079054 SEAS G

| | | | | | |
|---|---|---|---|---|---|
| **reference:** | **06006-hire breakdown** | | | **date:** | **2006-8-30** |
| vessel: | MV VANGUARD | | | c/p date: 2006-2-23 | |
| owners: | J & F LIMITED | | | | |
| delivery: | DLOSP SHANGHAI 2006-3-3 5:48 GMT with 454.70 MT IFO + 90.59 MT MDO | | | | |
| redelivery: | APS JIANGYIN 2006-8-2 14:18 GMT with 452.75 MT IFO + 90.51 MT MDO | | | | |

| | description | | | | | dne to charterers | due to owners |
|---|---|---|---|---|---|---|---|
| 1 | charter from | 2006-3-3 5:48 | – | 2006-8-2 14:18 GMT | | | |
| | hire days | 152.354167 | X | US$8,500.00 PDPR | | | 1,295,010.42 |
| | address commission | 3.75% | X | | | 48,562.89 | |
| 2 | bunkers on delivery | | | | | | |
| | IFO/MT | 454.700 | X | US$310.00 P/MT | | | 140,957.00 |
| | MDO/MT | 90.590 | X | US$520.00 P/MT | | | 47,106.80 |
| | bunkers on redelivery | | | | | | |
| | IFO/MT | 452.750 | X | US$310.00 | | 140,352.50 | |
| | MDO/MT | 90.510 | X | US$520.00 | | 47,065.20 | |
| 3 | off-hire, crane breakdown | | | | | | |
| | crane no. 2 at mundra | 2006-4-15 13:30 | – | 2006-4-15 16:00 LT | | | |
| | crane no. 1 at hazira | 2006-5-25 10:15 | – | 2006-5-25 11:15 LT | | | |
| | crane no. 3 at hazira | 2006-5-25 8:30 | – | 2006-5-25 9:30 LT | | | |
| | | 2006-5-25 11:00 | – | 2006-5-25 17:00 LT | | | |
| | crane no. 2 at hazira | 2006-5-27 12:30 | – | 2006-5-28 21:45 LT | | | |
| | sub-total | 1.822917 | | | | | |
| | 1/4 off-hire | 0.455729 | X | US$8,500.00 PDPR | | 3,873.70 | |
| | address commission | 3.75% | X | | | | 145.26 |
| | IFO/MT-1.0 per day | 0.46 | X | US$310.00 P/MT | | 141.28 | |
| | MDO/MT-1.9 per day | 0.87 | X | US$520.00 P/MT | | 450.26 | |
| 4 | off-hire, awaiting time for repair at mumbai | | | | | | |
| | | 12.056900 | X | US$8,500.00 PDPR | | 102,483.65 | |
| | address commission | 3.75% | X | | | | 3,843.14 |
| | IFO/MT-1.0 per day | 12.06 | X | US$310.00 P/MT | | 3,737.64 | |
| | MDO/MT-1.0 per day | 12.06 | X | US$520.00 P/MT | | 6,269.59 | |
| 5 | off-hire, owners' replenishing fw at singapore | | | | | | |
| | 5.833 hours | 0.243042 | X | US$8,500.00 PDPR | | 2,065.85 | |
| | address commission | 3.75% | X | | | | 77.47 |
| | IFO/MT-1.0 per day | 0.24 | X | US$310.00 P/MT | | 75.34 | |
| | MDO/MT-1.0 per day | 0.24 | X | US$520.00 P/MT | | 126.38 | |
| 6 | C/E/V | 139.598496 | | US$900.00 PMPR | | | 4,130.59 |

| | | |
|---|---|---|
| 7 | joint off-hire survey charge (usd900/3) | 300.00 | |
| 8 | intermediate hold-cleaning/ILOHC | | |
| | lugait, philippines - port louis, mauritius (cement) | | 1,000.00 |
| | sur, oman - mundra, india (urea) | | 1,000.00 |
| | mundra, india - b.i.k., iran (steel pipes) | | 1,000.00 |
| | shuaibai, kwait - alba jetty, bahrain (petcoke) | | 1,000.00 |
| | mina saqr, U.A.E. - hazira, india ( limestone ) | | 1,000.00 |
| | ILOHC, new mangalore - nanjing (iron ore) | | 4,000.00 |
| 9 | agreed compensation for petcoke loading ( lump sum) | | 10,000.00 |
| 10 | AP for calling lugait (8-11/3/2006) | | 1,875.00 |
| | AP for calling bahrain (2-9/5/2006) | | 1,875.00 |
| 11 | owners' expenses at lugait (watchman and medical php 12300) | 240.00 | |
| | owners' expenses (200 fw rs 36885 x 0.03126) | 1,153.74 | |
| 12 | charterers' hire payment | | |
| | 1st hire paid on 2006-3-6 | 310,926.39 | |
| | 2nd hire paid on 2006-3-17 | 123,162.59 | |
| | 3rd hire paid on 2006-3-31 | 123,162.59 | |
| | 4th hire paid on 2006-4-14 | 125,162.59 | |
| | 5th hire paid on 2006-4-30 | 123,949.53 | |
| | 6th hire paid on 2006-5-16 | 124,162.59 | |
| | 7th hire paid on 2006-6-5 | 137,878.76 | |
| | 8th hire paid on 2006-6-16 | 123,162.59 | |
| | 9th hire (breadown as on 2006-6-30) | 0.00 | |
| | 10th hire (breakdown as on 2006-7-24) | 0.00 | |

| | | |
|---|---|---|
| sub-total: | 1,548,765.65 | 1,514,020.67 |
| **amount in charterers' favour:** | | **US$34,744.98** |
| grand-total: | 1,548,765.65 | 1,514,020.67 |

**E.&O.E.**

Be payable to:

correspondence bank:   Wachovia Bank N.A. New York, U.S.A.

chips ABA:   0509

swift code:   PNBPUS3NNYC

beneficiary bank:   Xiamen International Bank, Xiamen

Xiamen International Plaza, 8-10 LuJiang Road, Xiamen 361001 China

swift code:   IBXHCNBA

in favor of:   Sinolink Shipping Co., Ltd.

USD A/C NO: 9830 313 000 719

REF: MV VANGUARD/TRANS POWER-HIRE OVERPAYMENT

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                          ) ss.:
COUNTY OF NEW YORK       )

Allison E. Alexander, being duly sworn deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 25th day of August, 2008, she served the within **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND RELEASE RESTRAINED FUNDS** by e-mail to the following:

Michael E. Unger, Esq. and
Lawrence J. Kahn, Esq.
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
J & F Limited
80 Pine Street
New York, New York 10005

E-mail: unger@freehill.com and
kahn@freehill.com

Allison E. Alexander

Sworn to before me this
25th day of August, 2008

Notary Public

LESCENE GIBBONS
Notary Public, State of New York
No. 01GI6044509
Qualified in New York County
Commission Expires July 10, 20 16

253120.1
525059.00100/6606531v.1