373-08/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
TRANS POWER CO. LTD.,

                                                  **08 CV 5381 (LAP)**

                Plaintiff,

    -against-

J&F LIMITED,

                Defendant.
------------------------------------------------------x


**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF VACATURE OR REDUCTION
<u>OF MARITIME ATTACHMENT</u>**


                                                  Freehill Hogan & Mahar, LLP
                                                  Attorneys for Defendant
                                                  J&F Limited
                                                  80 Pine Street
                                                  New York, NY 10005
                                                  (212) 425-1900
                                                  (212) 425-1901 fax


Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)


NYDOCS1/311516.1

**PRELIMINARY STATEMENT**

This Reply Memorandum of Law is respectfully submitted along with the accompanying Cheung Reply Declaration and Ho Reply Declaration in further support of Defendant J&F Limited ("J&F")'s motion to vacate or reduce the attachment obtained by Plaintiff Trans Power Co. Ltd. ("Trans Power"). For the reasons set forth below, the attachment should be found to be obtained in bad faith and should be vacated, awarding J&F its fees and disbursements expended in this action.

**ARGUMENT**

**Point I**

**RULE E(4)(f) AND THE *AQUA STOLI* DECISION MANDATE THAT THE COURT EVALUATE WHETHER THE PLAINTIFF HAS PROPERLY OBTAINED AN ATTACHMENT**

There is no dispute that Trans Power bears the burden of showing why the Rule B attachment should not be vacated and consequently bears the burden of proving that it has a valid *prima facie* maritime claim against J&F. *See* Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006). As this Court recognized subsequent to Aqua Stoli, this inquiry exists, in part, to ensure "that a plaintiff does not 'hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.'" Navision Shipping A/S v. Yong He Shipping (HK) Ltd., 2008 U.S. Dist. LEXIS 62423, at *8 (S.D.N.Y. Aug. 8, 2008) (Chin, J.).

Trans Power admits that the burden of proof is its and also acknowledges that in assessing whether a plaintiff satisfies its burden, the district courts apply a variation of two standards that have become known as "the *prima facie*" standard (which essentially focuses on the allegations in the complaint) and the "reasonable grounds" standard

(which considers evidence extrinsic to the complaint). Trans Power claims that the *prima facie* standard is the current trend and implies that this standard should be applied by the Court in this case. J&F takes no position as to which standard should be applied, because even under the significantly less burdensome *prima facie* standard, Trans Power does not meet its burden. Trans Power claims, in a single-page argument unsupported by any caselaw and without any meaningful analysis that it has met the pleading standard and thus its attachment should be maintained. (*See* Plaintiff's Memo. at 8). Such arguments by Plaintiff on the standard of proof are flawed.

This Court's review is not limited to an investigation as to whether the allegations – in a vacuum – tend to plead a cause of action that sounds in admiralty. Plaintiff seems to suggest that merely stating an allegation of a maritime claim is sufficient to satisfy the *prima facie* standard and defeat any challenge to the allegations in the complaint. The law, however, is not quite so because if Plaintiff were correct, then it simply would not be possible to challenge an attachment on the allegations in the pleadings, despite the fact that it is well-established that a defendant has the right to do so. "Rule E(4)(f) is designed to…[guarantee] a prompt post-seizure hearing at which [the defendant] **can attack the complaint**, the arrest, the security demanded, or any other alleged deficiency in the proceedings". *Advisory Committee Notes to Rule E* (1985 Amendment) (emphasis supplied).

Instead, this Court can, and should, review the proofs submitted by the two sides to determine whether Trans Power's claim is frivolous. In a situation where both sides have submitted the proofs necessary for the Court to reach such a determination, the Court should review this extraneous evidence to determine whether or not the Plaintiff's

claim is validly pled or only appears to be so and is actually false. *See, e.g.,* Navision Shipping, 2008 U.S. Dist. LEXIS 62423, at *10 n.8. *See also* Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677 (S.D.N.Y. Oct. 11, 2007), *citing* Bell v. Hood, 327 U.S. 678, 682-83 (1946) for the proposition that the Court, even applying the *prima facie* standard, should determine whether a claim facially falling within the Court's jurisdiction is actually "immaterial," "insubstantial" or "frivolous". Plainly, the only way for the Court to make such an examination is to look to evidence outside the Complaint itself. As explained below, when all extraneous evidence is considered against the allegations of Trans Power's Complaint, it is clear that Trans Power has not stated a valid claim against J&F.

Even under the *prima facie* standard advanced by Trans Power as the proper test, Trans Power still has the burden of identifying the law governing the underlying dispute and demonstrating that, under that law, the allegations in the complaint demonstrate a valid *prima facie* claim against J&F. *See* OGI Oceangate Trans. Co. v. RP Logistics Pvt., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 21, 2007) (Sweet, J.), *reh'g denied*, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007); Stolthaven Houston, Inc. v. RACHEL B, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. July 18, 2008) (Patterson, J.); Naias Marine S.A. v. Trans Pacific Carriers Co., 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 9, 2008) (Leisure, J.). No law supports Trans Power's claim for overpaid hire in the circumstances here, as will be seen below.

In OGI Oceangate, for example, Judge Sweet vacated an attachment seeking security for plaintiff's claim that the defendant had caused the wrongful arrest of a vessel in India. No evidence was offered on the validity of such a claim under the foreign law.

Judge Sweet, applying the *prima facie* standard, vacated the attachment on the grounds that the plaintiff had failed to establish a *prima facie* claim for wrongful arrest. Judge Sweet reasoned that "[w]ithout an understanding of the applicable law, the Court is unable to determine whether [the plaintiff] has a valid *prima facie* claim of wrongful arrest. Since [the plaintiff] has the burden of affirmatively showing that it has such a claim..., [the] plaintiff has failed to meet its burden with respect to his claim of wrongful arrest." 2007 U.S. Dist. LEXIS 46841 at *14.

Thus, under either standard, the Court remains obliged to make certain conclusions regarding the validity of a plaintiff's claim and whether that claim has any basis to be sustained under the governing law. *See* OGI Oceangate, 2007 U.S. Dist. Lexis 74180 at *6 (noting that under Aqua Stoli the district court's role is to make conclusions regarding the validity of plaintiff's claims). Here, Trans Power makes an effort to show, via an accounting, that it has a sustainable claim against J&F for overpaid hire. Based on that accounting alone, that claim, on its face, is demonstrably false. Trans Power thus fails to satisfy its burden of proof regardless of the standard to be applied.

Indeed, and as explained below, Trans Power's claims are not sustainable and the attachment must therefore be dismissed. The inquiry in this regard is not fact-intensive or an impermissible analysis of the merits. As Judge Baer held in Sixteen Thirteen Marine S.A. v. Congentra AG., 2008 U.S. Dist. LEXIS 56271, *23-24 (S.D.N.Y. July 25, 2008), the Court in an E(4)(f) hearing tests "for plausibility, not veracity." In the Sixteen Thirteen case, the defendant attempted to demonstrate that the claims of the plaintiff in the Complaint were false by engaging in a credibility determination between the two sides. This was the wrong approach, particularly in a case where the merits were to be

decided in arbitration in a foreign country. Here, though, there is no credibility test to be performed. All that is required of the Court in order to find that Trans Power's claim herein is frivolous is to compare the undisputed facts (including especially that Trans Power paid no hire during the relevant offhire period) and the account statements of the two parties. It is respectfully submitted that this evidence shows that Trans Power's claim is false for the reasons set out more fully below.

The inquiry J&F submits to the Court focuses on the specific allegations of Trans Power's Verified Complaint filed before this Court, and the threshold question of whether Trans Power has stated a sustainable claim against J&F. As explained above, this is precisely the type of inquiry which Aqua Stoli mandates a district court perform in evaluating whether a plaintiff has properly obtained an attachment.

**Point II**

**TRANS POWER'S CLAIM OF OVERPAID HIRE
IS FICTIONAL AND CANNOT SUPPORT
A RULE B ATTACHMENT**

Trans Power's opposition to the motion agrees that the $250,000 in escrow in Hong Kong acts as security to both sides with respect to the claim by J&F for underpaid hire, collision damages and related charges. Trans Power's opposition raises instead the argument that the additional funds it seeks in security are for a claim of "overpaid hire" in the amount of $251,033.10 (plus interest, attorneys fees and other amounts). Trans Power's opposition states specifically that these funds relate directly to the offhire event following the collision.[1] Such claim, however, is a fiction and is not supportable.

---

[1] Trans Power's argument that J&F has been on notice of this for a lengthy period of time is incorrect. Trans Power submitted its re-amended answer and counterclaim to the arbitral tribunal, but never to J&F. The fax Trans Power intended to send to J&F with such re-amended answer and counterclaim never arrived because it was sent solely to an incorrect fax number. J&F's first notice of the re-amended answer and

NYDOCS1/311516.1                              5

First and most importantly, Trans Power never paid hire during this offhire period. *See* Cheung Reply Declaration ¶4-5 and Ex. 1 thereto. It cannot be any simpler than this – Trans Power is not in a position to claim it ***overpaid*** hire when ***it never paid hire at all*** for the relevant period. This is particularly so when Trans Power's own documents confirm the same. Exhibit 2 to the Greenbaum Declaration is a copy of Trans Power's statement of account for charter of the M/V VANGUARD. On the second page of this exhibit, at item 12, Trans Power's statement makes clear that no hire was paid following the breakdown – the 9th and 10th hire charges are shown as $0 payments.

Where, then, does Trans Power draw its conclusion that it overpaid hire? This stems from the fact that it has credited itself some $292,258.33 (*see* Greenbaum Declaration Ex. 2, at p.1 item 4a) for the subject offhire period, and then double-counts this credit by failing to offset same with an acknowledgment that it never paid this amount. While Trans Power might, *arguendo*, have had a cognizable claim for overpaid hire if it had paid the $292,258.33 for the offhire period and then sought recovery of same, here, Trans Power never paid this amount to J&F and so cannot now claim reimbursement of such funds.

It is important to note that this is not merely a "settling of accounts." The column "due to charterers" on Trans Power's Greenbaum Declaration Ex. 2, when all sums are added up, come to the $1,775,198.94 figure from which Trans Power declares it is owed $251,033.10 in overpaid hire. This includes the $292,258.33 in offhire credits it has already given itself in item 4a of this exhibit.

---

counterclaim was its submission of the same in opposition to the instant motion a few days ago. *See* Ho Reply Declaration, ¶4-5 and 7.

A comparison of J&F's comparable statement (*see* Cheung Reply Declaration Ex. 1) shows hire is actually underpaid by Trans Power, in the amount of approximately $79,704.13.[2] Many of the figures on the two account statements are the same, but there are a few differences. For example, the quantum of bunkers on redelivery differs. Trans Power claims 452.750 MT of IFO and 90.510 MT of MDO at redelivery, while J&F's figures instead show 447.88 MT IFO and 87.56 MT MDO, for a difference between the parties' figures of approximately $3,050. In all, the proper difference between the two sides' charter hire accountings is less than $25,000. This amount, even if *arguendo* the arbitral tribunal were to entirely favor Trans Power on the issue of hire, is certainly already secured by the $250,000 in escrow which covers the question between the parties as to hire (including interest, costs and other awardable items) to the extent of nearly $100,000.[3]

Accordingly, Trans Power's claim of overpaid hire is frivolous, and, as set forth in J&F's moving papers, to the extent it disputes J&F's hire statement, it is fully secured for the valid claims, which exclude Trans Power's double-counting of offhire (which was never paid to J&F).

---

[2] This figure is arrived at by subtracting the sums owed for the collision damage (item 13, which subtotals to $151,871.49) from the balance due owners of $231,575.62.
[3] The remaining amount of the escrow concerns security for the collision-related damages, not including hire.

NYDOCS1/311516.1                              7

## CONCLUSION

For all the foregoing reasons, and for those set forth in J&F's moving papers, the attachment should be vacated or reduced, with a finding that the attachment was wrongful and brought in bad faith, awarding J&F its reasonable attorneys fees in bringing this application.

Dated: New York, New York
August 29, 2008

                            Respectfully submitted,
                            FREEHILL HOGAN & MAHAR, LLP
                            Attorneys for Defendant
                            J&F Limited

By: _____
      Michael E. Unger (MU 0045)
      Lawrence J. Kahn (LK 5215)
      80 Pine Street
      New York, NY 10005
      (212) 425-1900
      (212) 425-1901 fax